Mr. Boyd, you may proceed. Good afternoon, Your Honors. Andy Boyd from the State Appellate Defender's Office on behalf of Defendant DeMarco Comer. If it pleases the Court and Counsel, following the jury trial in this case, DeMarco was convicted of residential burglary and aggravated criminal sexual abuse. He was convicted of these offenses based on the testimony of one witness, Tiffany Howard. She was the only witness to identify DeMarco as the perpetrator in this case and we argue that her testimony or eyewitness testimony was flawed for a number of different reasons. The second argument that we presented is the trial counsel provided ineffective assistance by failing to call or request the appointment of an expert witness who could have testified about the unreliability of eyewitness identification testimony from a scientific background. And both of these arguments, Your Honor, the trial counsel provided ineffective assistance among courts of review in Illinois and in other jurisdictions amongst legal commentators and experts that eyewitness testimony is fallible and that an uncritical reliance on eyewitness testimony can lead to wrongful convictions. As to our first argument, this was not a particularly strong case for the case. We've seen that eyewitness testimony is not as reliable as it seems to be. In the Perry case in 2012, the United States Supreme Court case, Justice Sotomayor summed up the problems with eyewitness testimony as follows. Eyewitness disidentification is the single greatest cause of wrongful convictions in this country. Eyewitness recollections are highly susceptible to distortion. Jurors routinely overestimate the accuracy of eyewitness identifications, even though eyewitness confidence is a very poor gauge of accuracy. Courts of review in Illinois have picked up on this and have reached the same conclusions about eyewitness testimony. I'm talking about the Tisdale Court and the Lerman Court, which was a significant potential for eyewitness error. Jurors had misconceptions about the abilities of eyewitnesses and had a high degree of prosecutions that ultimately result in DNA exonerations dependent, in the first instance, on eyewitness testimony for the convictions. Courts of review in other jurisdictions have reached similar conclusions. We've cited some of these cases in our briefs. We have cases from Connecticut, Massachusetts, Pennsylvania. All of these cases, citing studies that show that mistaken eyewitness identification testimony is by far the leading cause of wrongful convictions. We've also cited some legal commentary and some expert in psychology studies explaining the unreasonable assistance argument. We're not asking for this Court to create a bright-line rule. Although, we would argue that it probably would be a good practice for defense attorneys at the trial level to create a bright-line rule. In this particular case, for reasons that we've described in our brief and reasons that I'll describe in this argument, Tiffany's identification of DeMarco as the perpetrator was highly flawed. And it was highly flawed for a number of different reasons that could have been explained and underlined and supported by the testimony of an expert. And had counsel called that expert, counsel's cross-examination of Tiffany would have been far more effective because it would have been underlined and supported by the testimony of an expert witness. This isn't a typical show-up, though. I mean, those are one of the things that are said to have been inherently unreliable when the police go and say, is this the guy? But she called the police and said, hey, I've canvassed my neighborhood or something, and I think it's this guy based on my description of him to others. And when they bring him out, then, you know, but it's sort of a non-typical show-up. And those are, even, and then you suggest maybe that a line-up would be better, but those are also something that the science says is not a very good idea, that you should have an individual line-up, not six across, but one after another after another or something. I mean, so, I mean, I don't know that this is a classic case of the police show-up that are being, you know, being discussed in some of the cases and some of the research, but she had a pretty detailed description of an individual that really didn't seem to vary much from the person. To answer your question, Your Honor, our position is that this is even worse than a standard show-up. Because of the way this investigation played out, first of all, we had this very strange situation where the police took Tiffany to three different apparently random places looking for the perpetrator. There's no explanation in the record as to why they were looking in these different places. They didn't find the perpetrator at these different places. And then, as you point out, apparently Tiffany went out on a search herself for the perpetrator, gave what we argue is a relatively vague description of somebody with a gap in his mouth and wearing black clothing. Apparently somebody points out that this individual may be in a nearby residence. She goes to that nearby residence. She doesn't see him from outside the residence. She doesn't testify to that. What she testifies to is that she sees his hand stick out the window. Somebody's hand stick out the window. And so, based on what somebody else said about where somebody might have been and somebody sticking his hand out the window, she then jumps to the conclusion that the person in that residence is the person who was also in the apartment room. And then the police go ahead and go into the residence. They pull DeMarco out. And at that point, she's already made up her own mind that the person in that residence, the person who stuck his hand out the window, is the perpetrator. So in our view, this is even worse. There was circumstantial evidence that the puffy coat, you know, the way the guy was dressed, there's other circumstantial evidence that they find to have that scene, right? There was the puffy coat. We can see as we must that Tiffany stated that the perpetrator had a puffy coat on. A puffy coat was found next to DeMarco in the residence. Our position is that lots and lots of people wear these puffy coats in the wintertime. These are ubiquitous. We see people walking down the streets repeatedly wearing these puffy coats. And as defense counsel pointed out at trial, there wasn't any testing done as far as hair or fibers or anything like that that would have definitively connected that puffy coat to that particular incident. So yes, there was a puffy coat. But it was nothing distinctive about this particular crime. I mean, to follow up from Judge O'Brien's question, there's this circumstantial evidence. You've got the person who's saying she's 100% sure this is the guy. You've got the puffy coat. You've got the thing at the area where the guy, you know, where he's found. You've got other information about how he was dressed. You've got the shortness of time between, you know, basically she's tracking the guy down and asking questions about, you know, if you have somebody with this gap in the teeth. I mean, there's all these other, you know, factors which are very unlike the situation where you have a raw lineup and you don't have all these other circumstantial evidence pieces. But the first thing I'd like to say in response to your question, Your Honor, is that as to certainty, these studies that we've cited and that these law reviewers cited and that these courts have cited have shown repeatedly that the witness's degree of certainty is the most flawed of these five biggest factors that get used. And so the first thing to say is that, yes, Tiffany testified that she was certain, but that doesn't get us very far. We know, because it's been scientifically shown to be the case, that witness certainty is something that can be molded by external influences. It's something that can change over time. It's something that can be reinforced between a witness and a documentation. And surely we would not go so far as to say that every time a witness says that they're certain about something, they're wrong. That's not our position. Our position is simply that a witness's certainty is not what it seems to be. In other words, it's not a deadlocked cinch when a witness says, I'm certain that this happened. I'm certain that this person did this certain thing. I'm certain that I saw this certain thing happen. That doesn't necessarily mean that the witness is correct. And we see this, unfortunately, time and time and time again in these exoneration cases where witnesses say that they're certain. I'm certain that this person did this to me. I'm 100 percent certain of it. Well, guess what? Ten years later, we have DNA tests that come back, and it's not the guy. The wrong guy's been sitting in prison for ten years. So the reason that we cited these studies and these law review articles is to bring to this Court's attention the idea that this old school way of thinking that a witness's certainty therefore automatically leads to a conviction and therefore automatically leads to an affirmation of that conviction, we need to try to get beyond that. Our judicial system as a whole needs to try to get beyond that because the studies simply don't bear that out. We got beyond it. I mean, now we allow this expert testimony. We're beyond that. Right, right. But the question here is, is it a per se reversible error not to have an expert? No, it's not. It's not per se. And in order for this Court to grant relief to us on our second issue here, there's no need for this Court to find or draft or create some kind of a red line rule that says that an expert has to be called or appointed in every single case where there's eyewitness identification testimony. In this particular case where we just have one witness who identified DeMarco as the perpetrator, when this witness's testimony was flawed for a whole bunch of different reasons, and we point these out in our brief, and I'll just throw out a couple of these off the top of my head, this business of her believing that this incident took between five and ten minutes, that is an absolutely classic case of a witness under a lot of stress, greatly over-exaggerating the amount of time that it took. And we have the fact that DeMarco was a stranger. The light was dimmed for at least a part of this incident. The light was dimmed. She only saw him for a very brief period of time. Given all these different circumstances in this particular case, and given the weakness of the State's case that it relied solely on one eyewitness whose identification testimony was shaky at best, in this particular case, yes, calling an expert witness could and would have made a difference. There's just no question, because what the expert would have been able to do is to provide a scientific foundation for the cross-examination. The counsel did cross-examine Tiffany fairly well. He got Tiffany to concede that she was up all night. She hadn't slept for a very long period of time. She was zoning out during this incident. It was dim in the room, again, at least for part of the incident. She saw the perpetrator for a brief period of time. The guy was wearing a hat and a jacket, which covered up some of his features. And unfortunately, during that cross-examination, Tiffany, for the defense at any rate, Tiffany said that she was certain about this, certain about her identification. And what the admission of an expert would have done at that point was to provide some scientific foundation for what counsel had already done, which was to undermine Tiffany's identification at least a little bit. And it would have provided a scientific foundation for that. We know from the research a couple of things. Certainty doesn't automatically correlate with accuracy. But the problem is the jury doesn't understand that. The jury doesn't know that unless there's an expert there to explain that to them. Thank you. So we are arguing that the failure to call the expert witness was objectively unreasonable. It was also prejudicial because in a lot of different cases, expert testimony has a lot of influence on the jury. We know that. That's why it's presented in both criminal and civil cases. So we're arguing two things, Your Honors. The first argument is that we'd like for this Court to find that there was insufficient evidence to convict DeMarco, reverse his convictions outright. In the alternative, we respectfully request that the Court find that counsel was ineffective, reverse DeMarco's convictions, or man the case for a new trial or other proceedings. If there's any other questions, I'll be happy to answer them. Thank you, Your Honor. Thank you, Your Honor. Mr. Arado. Please, the Court. Good afternoon, Your Honors. Counsel. Thomas Arado on behalf of the people. I do believe that counsel is asking for a per se rule that if you don't call an eyewitness expert that it is per se reversible error. Well, in this case, what would be sound trial strategy for defense counsel not to? Post-Lurma, he should perhaps a greater better argument is that he could have and perhaps could have called a witness or at least consulted an expert witness. There are no cases cited by counsel that pre-Lurma it is ineffective assistance of counsel not to call an expert witness regarding the eyewitness testimony. So this Lurma has really changed the field in Illinois. And this case was tried and he was convicted in July of 2014. And Lurma obviously wasn't until 2016, even though the original Lurma decision didn't come out until after this trial. So as the understanding of a reasonable attorney at the time of this trial, he would have been even probably accepted by the trial judge if he had called it. It was not unreasonable for the counsel not to have called a witness. Now, as I say, post-Lurma, we might have a different argument. Even then, if you look at the Lurma factors, the stress of the situation, the use and presence of a weapon, the use of a disguise or partial disguise, post-event information, nighttime viewing, cross-racial identification. Really, the only factor that an expert could have talked about was, in this case, the stress of the situation. One of the other Lurma factors that are pointed out by the Illinois Supreme Court would have been even relevant in this case. So how an expert would have been able to turn this case around, that goes to prejudicial prong. But we should say that even under the first prong of Strickland, he cannot find counsel as ineffective by his strategy at the time of this trial. As to the evidence itself, I believe Your Honors have pointed out well the evidence that Ms. Howard had testified as to her identification. As she went up to the room, she turned on a light, and counsel said it was five to ten minutes. She clarified her testimony was no more than five minutes. So that was a slight discrepancy there. The defendant came, pushed her to the bed. Therefore, there was a close encounter between them. She then gave a description to police. She was taken to various locations by the police, and she didn't misidentify anybody. She didn't say, oh, well, you know, that guy looks like him or anything like that, which is typical. What you might argue in a typical show-up situation is problematic. She went out on her own, did her own investigation. She was then called to police, and when police brought out this defendant, she said, hey, yes, that's him. At trial, she testified, I am 100 percent certain, and I will never forget the defendant's face in what she testified to. As Justice Carrier pointed out, we have the corroborating evidence of the puppy coat that was found at the scene with the defendant. And taken in totality, the evidence is, and viewed in the light most favorable to the prosecution under the common standard, the evidence is sufficient to prove the defendant guilty of the offenses. No other questions, we'll stand on the briefs for our main character. Thank you, Mr. Arado. Thank you. Mr. Freud. Thank you, Your Honors. A couple things to point out here. As far as the evidence, Tiffany's identification with DeMarco was the perpetrator. The starting point for this case is the fact that without Tiffany's identification that DeMarco was the perpetrator, we would not have had a conviction in this case. Everything hinges on Tiffany's identification. We do have some other evidence, a puppy coat. There's lots and lots of puppy coats out there. What this comes down to is Tiffany's identification of DeMarco. Without Tiffany identifying DeMarco, there's no conviction here. And we know from the research that Tiffany's certainty doesn't necessarily mean that she's accurate. The research tells us that. Even when taken in the light most favorable to the state, what we've got here is a situation in which we have one person, not multiple witnesses, just one person who identified DeMarco as the perpetrator, and that person was under a tremendous amount of stress, had a very short look at this perpetrator, testified that she was zoning out, which means that her level of attention was fairly low. And for all these different reasons, given the scientific evidence that we now know about the fallibility of eyewitness, this simply is not enough to sustain a conviction. DeMarco was convicted of two very serious offenses here based on the testimony of one single witness. And it bears mentioning that there was other people that were witness to this situation. There was at least one other adult. Tiffany's sister, Katja Howard, was there while this incident unfolded. Her testimony was extraordinarily brief. She didn't say anything about whether or not she saw the perpetrator's face or whether or not she could identify him. Why in the world would the state have even called Katja Howard to testify if she didn't have anything to contribute about who it was that committed this offense? This whole thing hinges on Tiffany's testimony. And even in the light most favorable to the state, given the flaws in her testimony and what we know about the fallibility of eyewitness identification testimony, there just isn't enough here to sustain a conviction. As far as our second argument, ineffective assistance to counsel, the first thing I'd like to underline this again so it's crystal clear, we are not asking for this Court to create a per se rule that defense counsel in every case where there's an eyewitness identification must call an expert. We're not asking for the Court to do this and the Court does not have to do this in order to grant relief. All the Court has to find and what we're asking this Court to find is that under this particular set of circumstances where you have just one witness identifying the perpetrator, that witness's identification is shaky for a lot of different reasons. In this situation, it would have made a difference in the ultimate outcome of the trial. I'd also like to talk very briefly about trial strategy. We know now that this evidence, this expert testimony on eyewitness identification is admissible. If it's admissible, there's no sound strategic reason not to present that evidence. When we talk about trial strategy, Your Honors, what we're talking about is defense counsel at trial balancing whether a certain piece of evidence is going to harm or help this client, whether it's going to help this client, potentially help this client or potentially hurt this client. And counsel has to many times do a balancing act and make a strategic decision as to whether it's better or worse in that particular situation to present a certain piece of evidence. In this situation, there's no such balancing act that needs to be performed. There's no harm in presenting this testimony. This testimony could not possibly have hurt DeMarco. It only could have helped him. So trial strategy is simply not an issue in this case. And the last thing I'd like to talk about very briefly is prejudice, as we've talked about. The reason that folks present expert testimony in any different kind of trial, whether it's a civil trial or a criminal trial, is because it informs the jurors about things that they might not otherwise understand. And here we had a situation where there's a shaky identification. There's flaws with that shaky identification. An expert could have pointed out certain things from an objective, scientific, neutral point of view that would have cast doubt on Tiffany's identification if DeMarco was the perpetrator. Yes, that's correct. However, a lot of these cases that we've cited in our brief, a lot of these law review articles, a lot of these scientific studies, came out well before this particular Lerman case. The landscape changed in 2016, did it not? The landscape changed some. It certainly did, and it changed in the defense's favor on this particular issue. And the defense counsel certainly would not have, that's just a fact, I can't argue otherwise, she would not have had the benefit of that decision at that time. But there's a lot of these other studies, a lot of these law review articles. And that's exactly what happened. When DNA became more ubiquitous, people started using DNA to establish some of these exonerations, and we took a look back, why did some of these wrongful convictions occur in the first place, and what study after study found was that time and time again, it happened because there was an eyewitness identification of the perpetrator, and the eyewitness was wrong. It was flat wrong. So we're respectfully asking the court to, in the first instance, reverse the conviction outright. In the alternative, reverse the conviction and send the case back for a new trial. What do you say about the Ennis cases? The Ennis cases, we argue, Your Honors, this is old law. The original Ennis case came out, I believe it was 26 years ago. The second Ennis case came out, I think it was 16 years ago. There's been a tremendous amount of advancement in the social sciences since then. The Ennis court, with all due respect to the Ennis court, the Ennis court simply did not have the benefit of what we know now about the availability of eyewitness identification testimony, and I think that's why the Supreme Court ruled the way it did. They changed the landscape, that's right, in 1990 and then 2000. I mean, when the court was looking at that, they didn't find it was a problem back then, right? Yeah, 26 or 16 years ago, that's correct. And things have changed by the time this trial had occurred in this case, Your Honor. Any other questions? Thank you for your time, Nurse. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as quickly as possible. Right now, we'll see you in a brief recess for a panel change.